**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 09-02046 (BWB) |
|  | ) | (Jointly Administered) |
|  | ) | Chapter 11 |
| HARTMARX CORPORATION, | ) |  |
| et al., | ) | Hon. Bruce W. Black |
|  | ) |  |
| Debtors.[1] | ) |  |
|  | ) |  |

**ORDER (I) APPROVING BIDDING PROCEDURES, (II) GRANTING CERTAIN
BID PROTECTIONS, (III) APPROVING FORM AND MANNER OF SALE
NOTICES, AND (IV) SETTING SALE HEARING DATE IN CONNECTION
WITH SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS**

Upon the motion (the "Motion") of the Debtors for entry of orders pursuant to 11

U.S.C. §§ 105, 363, and 365 and Fed. R. Bankr. P. 2002, 6004, and 6006, (a) (i) approving the

bidding procedures set forth herein and attached hereto as Exhibit 1 (the "Bidding Procedures"),

(ii) granting certain bid protections, (iii) approving the form and manner of sale notices, and (iv)

---

[1]   The Debtors consist of: Hartmarx Corporation (FEIN: 36-3217140); Anniston Sportswear Corporation (FEIN: 63-0255951); Briar, Inc. (FEIN: 36-3295194); Chicago Trouser Company, Ltd. (FEIN: 36-3654087); C.M. Clothing, Inc. (FEIN: 62-0726470); C.M. Outlet Corp. (FEIN: 23-2079484); Consolidated Apparel Group, Inc. (FEIN: 36-4451205); Country Miss. Inc. (FEIN: 23-2159300); Country Suburbans, Inc. (FEIN: 13-2536025); Direct Route Marketing Corporation (FEIN: 36-3353564); E-Town Sportswear Corporation (FEIN: 35-1045839); Fairwood-Wells, Inc. (FEIN: 36-2793207); Gleneagles, Inc. (FEIN: 52-0382880); Handmacher Fashions Factory Outlet, Inc. (FEIN: 62-0699057); Handmacher-Vogel, Inc. (FEIN: 13-2522868); Hart Services, Inc. (FEIN: 36-3119791); Hart Schaffner & Marx (FEIN: 36-1196390); Hartmarx International, Inc. (FEIN: 36-3849547); Hickey-Freeman Co., Inc. (FEIN: 05-0522438); Higgins, Frank & Hill, Inc. (FEIN: 36-3119788); HMX Luxury, Inc. (FEIN: 36-3432123); HMX Sportswear, Inc. (FEIN: 13-2882518); Hoosier Factories, Incorporated (FEIN: 35-1103970); HSM Real Estate LLC (FEIN: 36-4421906); HSM University, Inc. (FEIN: 36-3635288); Intercontinental Apparel, Inc. (FEIN: 22-2268615); International Women's Apparel, Inc. (FEIN: 74-1312494); Jaymar-Ruby, Inc. (FEIN: 35-0392340); JRSS, Inc. (FEIN: 35-1695663); Kuppenheimer Men's Clothiers Dadeville, Inc. (FEIN: 63-0179270); Monarchy Group, Inc. (FEIN: 26-0472040); National Clothing Company, Inc. (FEIN: 13-3056089); NYC Sweaters, Inc. (FEIN: 20-5399484); 106 Real Estate Corp. (FEIN: 23-1609394); Robert Comstock Apparel, Inc. (FEIN: 82-0494113); Robert's International Corporation (FEIN: 36-3671895); Robert Surrey, Inc. (FEIN: 36-6163392); Salhold, Inc. (FEIN: 36-3806997); Seaford Clothing Co. (FEIN: 36-1692913); Simply Blue Apparel, Inc. (FEIN: 20-3583172); Society Brand, Ltd. (FEIN: 36-6114108); Sweater.com Apparel, Inc. (FEIN: 20-5300452); Tag Licensing, Inc. (FEIN: 36-2876915); Tailored Trend, Inc. (FEIN: 13-1540282); Thorngate Uniforms, Inc. (FEIN: 23-1007260); Thos. Heath Clothes, Inc. (FEIN: 36-6114533); Trade Finance International Limited (FEIN: 36-3758253); Universal Design Group, Ltd. (FEIN: 36-3758257); M. Wile & Company, Inc. (FEIN: 16-0959019); Winchester Clothing Company (FEIN: 61-0983980); Yorke Shirt Corporation (FEIN: 36-3440608); Zooey Apparel, Inc. (FEIN: 20-5917889)

setting a sale hearing date (the "Sale Hearing") and (b) authorizing and approving (i) the sale (the "Sale") of substantially all of the Debtors' assets (the "Acquired Assets"), free and clear of liens, claims, encumbrances, and interests to Emerisque Brands UK Limited and SKNL North America, B.V. (collectively, the "Purchasers") pursuant to the Asset Purchase Agreement (as amended from time to time, the "Agreement")[2], dated June 1, 2009, by and between Hartmarx Corporation and certain of its subsidiaries named in the Agreement (collectively, the "Sellers") and the Purchasers or to the Successful Bidder (as hereinafter defined) submitting a higher or otherwise better bid, (ii) the assumption and assignment of certain prepetition executory contracts and unexpired leases (the "Assumed Contracts") and the assignment of certain postpetition executory contracts and unexpired leases (the "Postpetition Contracts," and collectively with the Assumed Contracts, the "Assigned Contracts") to the Purchasers or the Successful Bidder, (iii) the assumption of certain liabilities (the "Assumed Liabilities") by the Purchasers or the Successful Bidder, and (iv) the rejection of certain executory contracts; and the Court having reviewed the Motion and having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and it appearing that notice of the Motion was good and sufficient under the particular circumstances and that no other or further notice need be given; and after hearing the statements, arguments and representation of counsel and all persons who desired to be heard at the hearing on the Motion; and after due deliberation thereon and after considering such other and further matters as the Court deemed appropriate; and good and sufficient cause appearing therefor,

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Agreement.

## IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.     The Court has jurisdiction over this matter and over the property of the

Debtors and their respective bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and 1334.

Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.     This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N),

and (O).

C.     The relief requested in the Motion is in the best interests of the Debtors,

their estates, their stakeholders, and other parties-in-interest.

D.     The notice of the Motion and the hearing on the Motion, including notice

of the hearing on the Bidding Procedures, the Auction and the Sale Hearing, assumption and/or

assignment of the Assignment Contracts and Cure Amounts, and the rejection or termination of

the Rejected Contracts given by the Debtors constitutes due, sufficient, and timely notice thereof.

E.     The Debtors have articulated good and sufficient reasons for the Court to

(i) approve the Bidding Procedures, (ii) grant certain bid protections as provided in the

Agreement and in this order, (iii) approve the manner of notice of the Motion, the Sale Hearing,

and the assumption and/or assignment of the Assigned Contracts, (iv) approve the form of notice

of the Motion and the Sale Hearing to be distributed to parties-in-interest, including prospective

bidders, (v) approve the form of notice of the Cure Amounts (as defined below) and the

assumption and assignment of the Assumed Contracts to be filed with the Court and served on

parties to each Assumed Contract, and (vi) set the Sale Hearing.

F.     The Break-Up Fee and the Expense Reimbursement shall be paid in

accordance with the terms, conditions, and limitations of the Agreement (together, the "Bid

---

[3]     Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as
findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

Protections"), and (i) if triggered, shall be deemed an actual and necessary cost and expense of preserving the Debtors' estates, within the meaning of sections 503 and 507(b) of the Bankruptcy Code and are entitled to the super-priority provided thereunder, (ii) are of substantial benefit to the Debtors' estates, (iii) are reasonable and appropriate, including in light of the size and nature of the Sale and the efforts that have been and will be expended by the Purchasers notwithstanding that the proposed Sale is subject to higher or better offers for the Acquired Assets, (iv) were negotiated by the parties at arms' length and in good faith, and (v) are necessary to ensure that the Purchasers will continue to pursue their proposed acquisition of the Acquired Assets. The Bid Protections were a material inducement for, and condition of, the Purchasers' entry into the Agreement. The Purchasers are unwilling to commit to hold open their offer to purchase the Acquired Assets under the terms of the Agreement unless they are assured of payment of the Bid Protections. Thus, assurance to the Purchasers of payment of the Bid Protections promoted more competitive bidding by inducing the Purchasers to hold their bid open. Without the Bid Protections, other bidding would have been limited. Further, because the Bid Protections induced the Purchasers to research the value of the Acquired Assets and to submit a bid that will serve as a minimum or floor bid on which other bidders can rely, the Purchasers have provided a benefit to the Debtors' estates by increasing the likelihood that the price at which the Acquired Assets are sold will reflect their true worth. Finally, absent authorization of the Bid Protections, the Debtors may lose the opportunity to obtain the highest or otherwise best available offer for the Acquired Assets.

　　　　　G.　　　The Bidding Procedures are reasonable and appropriate and represent the best method for maximizing the realizable value of the Acquired Assets.

*[handwritten: The effectiveness upon the Debtors, DIP Agent, and Purchasers agreeing in form and substance to an amendment]*

**THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:** *[handwritten: to the Agreement]*

<u>**Bidding Procedures**</u>

*[handwritten: by 4:00 p.m. on June 2,]*

1.    The Bidding Procedures, as amended and as set forth on <u>Exhibit 1</u> *[handwritten: 2009, or such]* attached hereto and incorporated herein by reference as if fully set forth herein, are hereby *[handwritten: later date as the Debtors,]* approved and shall govern all proceedings relating to the Agreement and any subsequent bids for *[handwritten: the DIP Agent, and the Purchasers agree.]* the Acquired Assets in these cases, and the Auction, if applicable.

<u>**Sale Hearing**</u>

2.    The Court shall hold a Sale Hearing on June 25, 2009 at 2:00 p.m. (prevailing Central time), at which time the Court shall consider the remainder of the Motion not approved by this Order, approve the Successful Bidder, and confirm the results of the Auction, if any. Objections to the Motion (other than as it relates to the Auction), if any, shall be filed and served no later than 4:00 p.m. (prevailing Central time) on June 19, 2009 (the "<u>Objection Deadline</u>") on the following: (i) Hartmarx Corporation, 101 North Wacker Drive, Chicago, Illinois (Att'n: General Counsel), (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: George Panagakis and Eric Howe), (iii) counsel for the DIP Agent, Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Ave., New York, New York 10169 (Att'n: Jonathan Helfat and Daniel Fiorillo, (iv) counsel for the Creditors' Committee, Neal, Gerber, & Eisenberg LLP, 2 North LaSalle Street, Suite 1700, Chicago, Illinois 60602 (Att'n: Mark Berkoff and Tom Wolford), (v) counsel for the Purchasers, Steptoe & Johnson LLP, 750 Seventh Avenue, New York, New York 10019 (Att'n: Michael Rennock) and Steptoe & Johnson LLP, 2121 Avenue of the Stars, Suite 2800, Los Angeles, California 90067 (Att'n: Robbin L. Itkin and Kelly K. Frazier), and (vi) the Office of the United States Trustee for the Northern District of Illinois, 219 South Dearborn,

Room 873, Chicago, Illinois 60604 (Att'n: Gretchen Silver) (collectively, the "Notice Parties").

Objections, if any, related to the Auction or anything transpiring after June 19, 2009, including

the selection of a Successful Bidder other than the Purchasers shall be filed and served no later

than 11:00 a.m. (prevailing Central time) on June 25, 2009 on the Notice Parties and may be

presented at the Sale Hearing.

3.      The failure of any objecting person or entity to timely file and serve its

objection by the Objection Deadline shall be a bar to the assertion, at the Sale Hearing or

thereafter, of any objection to the Motion, the Sale, or the Debtors' consummation and

performance of the Agreement (including the transfer of the Acquired Assets and Assigned

Contracts free and clear of liens, claims, interests, encumbrances (and in the case of Assumed

Contracts, defenses)).

4.      The Sale Hearing, or any portion thereof, such as with respect to the

proposed assumption and assignment of a particular executory contract, may be adjourned by the

Debtors from time to time without further notice to creditors or parties-in-interest other than by

announcement of the adjournment in open court or on the Court's calendar on the date scheduled

for the Sale Hearing or any adjourned date so long as the deadlines set forth in the Agreement are

not violated or with the consent of the Purchasers if the Purchasers are the Successful Bidder.

**Bid Protections**

5.      Subject to delivery by the Purchasers to the Sellers of all Financing

Commitment Letters related to the Financing the Bid Protections are hereby approved, and any

and all objections to the Bid Protections that were not consensually resolved at or before the

Hearing are hereby overruled.

*[Handwritten marginalia: (i) and (ii) an agreement between the Debtors, the DIP Lender, and the Purchasers as to the operating budget provided for in the Agreement]*

6

6.      The Debtors shall timely pay the Break-Up Fee and the Expense Reimbursement to the Purchasers in accordance with the Agreement. The Debtors' obligation to pay the Break-Up Fee and the Expense Reimbursement, as provided in the Agreement, shall survive termination of the Agreement and, until paid in accordance with the Agreement, shall constitute a superpriority administrative expense claim in favor of the Purchasers. The Debtors shall be authorized to pay the Break-Up Fee and Expense Reimbursement to the Purchasers in accordance with the terms of the Agreement without further order of the Court. The Break-Up Fee and the Expense Reimbursement shall be paid, to the extent triggered in accordance with the Agreement, out of Sellers' cash or other collateral securing the Sellers' obligations to the lenders under the Debtors' debtor-in-possession credit facility (the "DIP Lenders") (prior to any recovery by such DIP Lenders) pursuant to Section 364(c)(1) of the Bankruptcy Code, shall be free and clear of all Encumbrances and other interests, shall be deemed an authorized and approved expenditure in the DIP Budget and the DIP Lenders shall be deemed to have consented to the priority and payment of the Break-Up Fee and the Expense Reimbursement, and to the Bid Protections, as set forth herein.

## Notice

7.      Notice of (i) the Motion, including the proposed Sale of the Acquired Assets to the Purchasers, (ii) the Sale Hearing, the Bid Deadline, and the Auction, and (iii) the proposed assumption and assignment of the Assumed Contracts to the Purchasers pursuant to the Agreement or to a Successful Bidder including notice of the Cure Amounts (and any deadlines for objections associated therewith) shall be good, sufficient, and timely notice, and no other or further notice shall be required, if notice is given as follows:

(a) <u>Notice Of Sale Hearing.</u> On or before June 5, 2009 (the "<u>Mailing Date</u>"), the Debtors (or their agent) shall serve the notice substantially in the form attached hereto as <u>Exhibit 2</u> (the "<u>Sale Notice</u>") along with the Motion, the Agreement, the proposed Sale Approval Order, the Bidding Procedures, and a copy of the Bidding Procedures Order by first-class mail, postage prepaid, upon (i) all parties to the Assigned Contracts, (ii) all parties that have requested special notice in these Chapter 11 Cases; (iii) the Office of the United States Trustee for the Northern District of Illinois (iv) the Pension Benefit Guaranty Corporation; (v) the Sellers' labor unions; (vi) counsel for the official committee of unsecured creditors appointed in these Chapter 11 Cases; (vii) counsel for Wachovia; (viii) the Purchasers and counsel for Purchasers; (ix) all entities known to have expressed an interest in a transaction with respect to any of the Acquired Assets during the past year from the Effective Date of the Agreement; (x) those persons filing notices of appearance or requests for notice under Bankruptcy Rule 2002 in these Chapter 11 Cases; (xi) all Governmental Entities and taxing authorities having or asserting jurisdiction over Sellers or any of the Acquired Assets (including the Internal Revenue Service, the United States Department of Justice, the United States Attorney Office for Northern District of Illinois, and the Securities and Exchange Commission); (xiii) all parties asserting Encumbrances on any of the Acquired Assets, including, but not limited to, Hibernian Direct, LLC; and (xiv) the counterparties to the Rejected Contracts. In addition, by the Mailing Date, the Debtors (or their agent) shall serve the Sale Notice only upon all parties identified as creditors set forth on Schedules D through H of each of the Sellers' Schedules of Statements and Liabilities.

(b) <u>Cure Notice.</u> On or before the Mailing Date, the Debtors shall file with the Court and serve on each non-Debtor party to an Assumed Contract a cure notice substantially in the form attached hereto as <u>Exhibit 3</u> (the "<u>Cure Notice</u>"); provided, however, that with respect to any Assumed Contracts with Western Glove Works or Burberry Limited (collectively, the "<u>Objecting Counterparties</u>"), the Debtors shall file and serve such Cure Notice on or before June 3, 2009. The Cure Notice shall state the cure amount that the Debtors believe is necessary to assume such contract or lease pursuant to section 365 of the Bankruptcy Code (the "<u>Cure Amount</u>") and notify each party that such party's contract or lease will be assumed and assigned to the Purchasers or a Successful Bidder to be identified at the conclusion of the Auction. Each non-Debtor party to the Assumed Contracts shall have until June 19, 2009 to object to the Cure Amount and must state in its objection with specificity what Cure Amount is required (with appropriate documentation in support thereof). If no objection is timely received, the Cure Amount set forth in the Cure Notice shall be controlling, notwithstanding anything to the contrary in any Assumed Contract, or any other document, and the non-Debtor party to the Assumed Contract shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims as to such Assumed Contract against the Debtors, the Purchasers, or the Successful Bidder, or the property of any of them. If an objection to the Cure Amount is timely filed and received and the parties are unable to consensually resolve the dispute, the amount to be paid under section 365 of the Bankruptcy Code, if any, with respect to such objection will be determined at a hearing to be requested by the Debtors or by the objecting counterparty. At the Purchasers' or the Successful Bidders' discretion, and provided the Purchasers or the Successful Bidder escrow the disputed portion of the Cure Amount, the hearing regarding the Cure Amount may be continued until after the Closing Date and the Assumed Contract(s) subjected to such Cure Amount shall be assumed and assigned to the Purchasers or the Successful Bidder at Closing.

8

(c)    Assumption/Assignment Notice For Purchasers.  On or before the Mailing Date, the Debtors shall file with the Court and serve on all non-Debtor parties to the Assigned Contracts a notice (the "Purchasers' Assumption/ Assignment Notice"), substantially in the form of the notice attached hereto as Exhibit 4, identifying the Purchasers as the party which will be assigned all of the Debtors' right, title, and interest in the Assigned Contracts, subject to completion of the bidding process provided under the Bidding Procedures; provided, however, that with respect to any Assigned Contracts with the Objecting Counterparties, the Debtors shall file and serve such Purchasers' Assumption/Assignment Notice on or before June 3, 2009.  The non-Debtor party to an Assigned Contract shall have until June 19, 2009 to object to the proposed assumption and assignment to the Purchasers and shall state in its objection, with specificity, the legal and factual basis of its objection.  If no objection is timely received, the non-Debtor party to the Assigned Contract shall be deemed to have consented to the assumption and assignment of the Assumed Contract to the Purchasers and shall be forever barred from asserting any objection with regard to the assumption and assignment.

(d)    Assumption/Assignment Notice For Qualified Bidders.  On or before the Initial Indication Deadline, the Debtors shall cause a notice (the "Qualified Bidder Assumption/Assignment Notice"), substantially in the form of the notice attached hereto as Exhibit 5, to be sent to each non-Debtor party to an Assigned Contract identifying all Qualified Bidders (except the Purchasers, which notice shall be governed by the Purchasers Assumption/Assignment Notice set forth above), which notice shall be served via e-mail to Objecting Counterparties so requesting.  The non-Debtor party to an Assigned Contract shall have until June 24, 2009 at 4:00 p.m. (prevailing Central time) to object to the proposed assumption and assignment to any Qualified Bidder and shall state in its objection, with specificity, the legal and factual basis of its objection.  If no objection is timely received, the non-Debtor party to the Assigned Contract shall be deemed to have consented to the assumption and assignment of the Assigned Contract to any Qualified Bidder and shall be forever barred from asserting any objection with regard to the assumption and assignment.

(e)    Publication Notice.  On or before the Mailing Date, or as soon thereafter as is practicable, the Debtors shall cause notice substantially in the form of the Sale Notice to be published in any newspapers and other publications determined by the Debtors to be advisable.

8.    Notwithstanding rules 6004(h), 6006(d), 7062, or 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") or any other Bankruptcy Rule or rule 62(a) of the Federal Rules of Civil Procedure, this order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution of this order.

9.    Except with respect to consenting to the payment of the Break-Up Fee and the Expense Reimbursement in accordance with the terms of the Agreement, nothing in this

Order or otherwise (a) shall or shall be deemed to waive, modify, prejudice, limit or impair the rights, claims, liens or interests of Wachovia and the DIP Lenders under the DIP Order and the DIP Financing or (b) shall or shall be deemed to waive, modify, prejudice, limit or impair the rights, claims, liens or interests of GE Commercial Finance Business Properties a/k/a General Electric Capital Business Asset Funding Corporation ("GE") including, but not limited to (i) GE's right to object to the sale of any asset on which GE has a lien; and/or (ii) GE's right to submit a credit bid in relation to any asset upon which GE has a lien.

10.    To the extent the lease for the real property located at 114 Oak Street, Chicago, Illinois (the "Oak Street Lease") is an Assumed Contract, Hibernian Direct, LLC ("Hibernian") shall be: (a) served with the Cure Notice, the Purchasers' Assumption/Assignment Notice, and the Qualified Bidder Assumption/Assignment Notice pertaining to the Oak Street Lease at the times and manner (including via email where applicable) provided in sub-paragraphs 7(b), (c) and (d) for service of same upon the respective non-Debtor party to an Assumed Contract; and (b) entitled to object to any cure amount for, or assumption/assignment of, the Oak Street Lease, based upon Hibernian's asserted claims, at the times and in the manner provided in sub-paragraphs 7(b), (c) and (d) for the respective non-Debtor party to an Assumed Contract; provided, however, nothing in this Order shall waive or otherwise impair any rights that the Debtors may otherwise have to challenge Hibernian's (y) standing to object to any cure amount for, or assumption/assignment of, the Oak Street Lease and (z) claims against the Debtors, including any mechanic's lien claims.

11.    This order shall be binding upon any subsequent trustee appointed in these Chapter 11 Cases or any subsequent chapter 7 cases.

12.    This Court shall retain jurisdiction to hear and determine all matters

arising from the implementation of this order.

Dated: _June 2_ , 2009


                                    _Burton R. Lifland_
                                    UNITED STATES BANKRUPTCY JUDGE

# Exhibit 1

## Bid Procedures

## HARTMARX CORPORATION
## BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the proposed sale (the "Sale") of substantially all of the assets of Hartmarx Corporation and its subsidiaries (collectively, the "Sellers"), debtors and debtors in possession in chapter 11 cases pending in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "Bankruptcy Court") (collectively, the "Debtors"). On May 31, 2009, the Sellers executed that certain Asset Purchase Agreement (as amended from time to time in accordance with the terms thereof, the "Agreement") with Emerisque Brands UK Limited and SKNL North America, B.V. (collectively, the "Purchasers"). The transaction contemplated by the Agreement is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court pursuant to sections 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code").

On May 21, 2009, the Debtors filed a Motion Pursuant to 11 U.S.C. §§ 105(a), 363, 365 and Fed. R. Bankr. P. 2002, 6004, 6006 for (i) Entry of an Order (a) Approving Bidding Procedures; (b) Granting Certain Bid Protections; (c) Approving Form and Manner of Sale Notices; (d) Setting Sale Hearing Date in Connection with Sale of Substantially All of Debtors' Assets; and (ii) Entry of an Order (a) Approving the Sale of Debtors' Assets Free and Clear of all Liens, Claims, Encumbrances and Interests; (b) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (c) the Assumption of Certain Liabilities; (d) Authorizing the Rejection of Certain Executory Contracts; and (e) Granting Certain Related Relief (the "Sale Motion"). On June 2, 2009, the Bankruptcy Court entered an Order Under 11 U.S.C. §§ 363, And Fed. R. Bankr. P. 2002 And 9014 (I) Approving Bidding Procedures (II) Granting Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing Date In Connection With Sale Of Substantially All Of Debtors' Assets (the "Bidding Procedures Order"). The Bidding Procedures Order sets June 25, 2009 as the date when the Bankruptcy Court will conduct a hearing (the "Sale Hearing") to authorize the Sellers to enter into the Agreement. All capitalized terms used but not otherwise defined in these Bidding Procedures have the meanings ascribed to them in the Agreement.

The Bidding Procedures set forth herein describe, among other things, the assets available for sale, the manner in which bidders and bids become Qualified Bidders and Qualified Bids (each as defined herein), respectively, the coordination of diligence efforts among bidders, the receipt and negotiation of bids received, the conduct of any subsequent Auction (as defined herein), the ultimate selection of the Successful Bidder(s) (as defined herein), and the Bankruptcy Court's approval thereof (collectively, the "Bidding Process"). The Debtors will consult with, among others, the official committee of unsecured creditors (the "Creditors' Committee") and obtain the consent of the DIP Agent (as defined herein) throughout the Bidding Process in accordance with the terms and conditions hereof. In the event that the Debtors and any party disagree as to the interpretation or application of these Bidding Procedures, the Bankruptcy Court will have jurisdiction to hear and resolve such dispute.

### Assets To Be Sold

The assets proposed to be sold include substantially all of the assets of the Debtors (the "Acquired Assets"). Qualified Bidders may submit a bid for (i) all of the Acquired Assets or (ii) a portion of the Acquired Assets. To the extent that a Qualified Bidder desires to bid on less than all of the Acquired Assets, the Debtors suggest, but shall not require, that such bids be for one or more of the groups of assets set forth on Appendix 1 attached hereto (each, an "Asset Group"). However, the Debtors may (i) provide priority diligence access to those Qualified Bidders bidding on less than all of the Acquired Assets who express interest in one or more of the identified Asset Groups as opposed to a portion thereof, and (ii) cease providing diligence access to such bidders for less than all of the Acquired Assets if, in the view of the Debtors (in consultation with the Creditors' Committee and with the consent of the DIP Agent), the Debtors believe such bids for less than all of the Acquired Assets will not, when combined with other bids, result in a recovery to the Debtors' estates that is equal to or greater than the All Assets Minimum Bid Amount (as defined below). A bid for less than all of the Acquired Assets may be conditioned on the bidder(s) being the Successful Bidder(s) on all or a portion of the Asset Group(s) included in its bid. However, as set forth below, when valuing any bid for less than all of the Acquired Assets, the Debtors (in consultation with the DIP Agent and the Committee) will take into account, among other things, whether the bid, when combined with other bids, equals or exceeds the All Assets Minimum Bid Amount.

### "As Is, Where Is"

The sale of the Acquired Assets, or any portion thereof, will be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Sellers, its agents, or estate, except, with respect to the Purchasers, to the extent set forth in the Agreement and, with respect to a Successful Bidder, to the extent set forth in the relevant purchase agreement of such Successful Bidder approved by the Bankruptcy Court.

### Free Of Any And All Claims And Interests

Except to the extent otherwise set forth in the relevant purchase agreement of such Successful Bidder or ordered by the Bankruptcy Court, all of the Sellers' right, title, and interest in and to the Acquired Assets, or any portion thereof, to be acquired will be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests on and/or against the Acquired Assets (collectively, the "Claims and Interests"), such Claims and Interests to attach to the net proceeds of the sale of such Acquired Assets subject to prior orders of the Bankruptcy Court.

### Participation Requirements

Any person who wishes to participate in the Bidding Process (a "Potential Bidder") must become a Qualified Bidder. As a prerequisite to becoming a Qualified Bidder, and in order to be given access to the data room and due diligence materials, a Potential Bidder, must, no later than June 19, 2009 (the "Initial Indication Deadline"), deliver (unless previously delivered) to the Debtors and their investment bankers at the addresses provided below:

2

(a)     An executed confidentiality agreement in form and substance satisfactory to the Debtors.

(b)     Current audited financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Acquired Assets, current audited financial statements of the equity holders of the Potential Bidder who must guarantee the obligations of the Potential Bidder, or such other form of financial disclosure and credit-quality support or enhancement as may be reasonably acceptable to the Debtors and their financial advisors;

(c)     A preliminary (non-binding) proposal regarding:  (i) the purchase price including the purchase price floor, (ii) the assets the Potential Bidder seeks to purchase, (iii) the structure and financing of the transaction (including, but not limited to, the sources of financing for the Purchase Price and the requisite deposit), (iv) any anticipated regulatory approvals required to close the transaction, the anticipated time frame, and any anticipated impediments for obtaining such approvals, (v) any conditions to closing that the Potential Bidder may wish to impose in addition to those set forth in the Agreement, (vi) the nature and extent of additional due diligence the Potential Bidder may wish to conduct and the date by which such due diligence must be completed, and (vii) the Potential Bidders' initial determination of whether it will be assuming the collective bargaining agreements; and

(d)     Sufficient information (apart from an asset purchase agreement) to permit the Debtors to determine, in their reasonable discretion, the proposed assignee's ability to comply with section 365 of the Bankruptcy Code, including providing adequate assurance of such assignee's ability to perform in the future with respect to any executory contract proposed or unexpired lease to be assumed and assigned (the "Adequate Assurance"), which, no later than June 12, 2009 for Purchasers and June 19, 2009 for all other Potential Bidders, shall be made available to any contract counterparty so requesting (by email, if requested by a contract counterparty).
      └ by June 19, 2009

A Potential Bidder who delivers the documents described in the foregoing subparagraphs and whose financial information and credit-quality support or enhancement demonstrate the financial capability of such Potential Bidder to consummate (after consultation with the DIP Agent and the Committee) the Sale if selected as a Successful Bidder, and who the Debtors determine, after first consulting with the DIP Agent with respect to the qualifications concerning each such Potential Bidder, is likely (based on availability of financing, experience, and other considerations) to be able to consummate the Sale within the time frame provided by the Agreement, will be deemed a "Qualified Bidder."  The Purchasers will be deemed Qualified Bidders for purposes of the Bidding Process.  As promptly as reasonably practicable after a Potential Bidder delivers all of the materials required above, the Debtors will determine in a manner not inconsistent with the DIP Agent's view, and will notify the Potential Bidder, the DIP Agent, and the Committee, whether such Potential Bidder is a Qualified Bidder.

**Due Diligence**

3

Upon satisfaction of (a) and (b) above, the Debtors will allow such potential bidder (a "Potential Qualified Bidder") to commence due diligence with respect to the Acquired Assets as described below. The Debtors will afford each Potential Qualified Bidder due diligence access to the Acquired Assets. Due diligence access may include such management presentations as may be scheduled by the Debtors, access to data rooms, on site inspections, and such other matters which a Potential Qualified Bidder may reasonably request and as to which the Debtors, in their reasonable discretion, may agree. The Debtors will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from Potential Qualified Bidders. The Debtors may, in their discretion, coordinate diligence efforts such that multiple Potential Qualified Bidders, including but not limited to the Purchasers, have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections. Neither the Debtors nor any of their representatives will be obligated to furnish any information relating to Acquired Assets to any Person other than to Potential Qualified Bidders.

## Bid Deadline

A Qualified Bidder who desires to make a bid must deliver the Required Bid Documents (as defined herein) to: (i) Hartmarx Corporation, 101 N Wacker Dr., Chicago, Illinois 60606, Attn: Taras R. Proczko, (tproczko@hartmarx.com); (ii) the Debtors' investment bankers, Moelis & Company, 77 West Wacker Drive, Suite 3200, Chicago, Illinois 60601, Attn: Ken Viellieu (ken.viellieu@moelis.com); (iii) the Debtors' counsel, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2000, Chicago, Illinois 60606, Attn: George N. Panagakis, (George.Panagakis@skadden.com); (iv) counsel to the DIP Agent, Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, New York, 10169, Attn: Jonathan N. Helfat (Jhelfat@oshr.com) and Daniel F. Fiorillo (Dfiorillo@oshr.com); and (v) counsel to the Creditors' Committee, Neal, Gerber & Eisenberg LLP, Two North LaSalle Street Suite 1700 Chicago, Illinois 60602-3801, Attn: Mark Berkoff, (mberkoff@ngelaw.com), so as to be received not later than 5:00 p.m. (prevailing Central time) on June 22, 2009 (the "Bid Deadline"). The Debtors shall serve a copy of all Required Bid Documents received by them to the Purchasers so as to be received by Purchasers' counsel and financial advisors on the Bid Deadline. The Debtors may extend (but are not obligated to do so) the Bid Deadline once or successively, so long as the deadlines in the Agreement are not violated or the Purchasers consent. If the Debtors extend the Bid Deadline, they will promptly notify all Qualified Bidders of such extension. As soon as reasonably practicable following receipt of each Qualified Bid, the Debtors will deliver complete copies of all items and information enumerated in the section below entitled "Bid Requirements" to Wachovia Capital Finance Corporation (Central), as agent (the "DIP Agent") for the lenders (the "DIP Lenders") under the Debtors' debtor-in-possession credit facility. ⌐ and the Committee

## Bid Requirements

All bids must include the following documents (the "Required Bid Documents"):

(a)    A letter stating that the bidder's offer is irrevocable until the earlier of (i) two Business Days after the closing of the Sale of the applicable Acquired Assets and (ii) 45 days after the Sale Hearing.

4

(b)      An executed copy of the Agreement, together with all schedules marked (a "Marked Agreement") to show those amendments and modifications to such Agreement and schedules that the Qualified Bidder proposes, including the Purchase Price (as defined in the Agreement).

(c)      A good faith deposit (the "Good Faith Deposit") in the form of a certified bank check from a U.S. bank or by wire transfer (or other form acceptable to the Debtors in their sole discretion) payable to Hartmarx Corporation (or such other party as the Debtors may determine) in an amount equal to 5% of the proposed purchase price, which Good Faith Deposit Hartmarx Corporation (or such other party as the Debtors may determine) shall hold in a segregated escrow account for the benefit of the Debtors.

(d)      Written evidence of a commitment for financing, or other evidence of ability to consummate the proposed transaction, that is satisfactory to the Debtors and their advisors.

## Qualified Bids

A bid will be considered only if the bid:

(a)      Is not conditioned on obtaining financing or on the outcome of unperformed due diligence by the bidder.

(b)      Proposes a transaction on terms and conditions (other than the amount of the consideration and the particular liabilities being assumed) that the Debtors determine, in their sole discretion in consultation with the Creditors' Committee and the DIP Agent, are similar to, and are not materially more burdensome or conditional than, the terms of the Agreement.

(c)      With respect to a bid for all, or substantially all, of the Acquired Assets, proposes a transaction that the Debtors determine, in their sole discretion in consultation with the Creditors' Committee and after obtaining the agreement of the DIP Agent, has a value greater than or equal to the sum of the Purchase Price, plus the amount of the Break-Up Fee and the Expense Reimbursement, plus $1,000,000 (collectively, the "All Assets Minimum Bid Amount"). For purposes of valuing the Purchase Price set forth in the Agreement, the Debtors estimate the value of the Assumed Liabilities to be not less than $33.5 million.

(d)      With respect to a bid for less than substantially all of the Acquired Assets, proposes a transaction that, when valued in conjunction with the value that the Debtors determine they can obtain (whether through a combination of Qualified Bids or otherwise) for the Acquired Assets not included in such bid, the Debtors determine, in their sole discretion in consultation with the Creditors' Committee and after obtaining the agreement of the DIP Agent, has a value greater than or equal to the All Assets Minimum Bid Amount.

(e)      Is not conditioned upon any bid protections, such as a break-up fee, termination fee, expense reimbursement, or similar type of payment.

5

(f)     Includes an acknowledgement and representation that the bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Acquired Assets prior to making its offer, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Acquired Assets in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Acquired Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Marked Agreement.

(g)     Includes a commitment to consummate the purchase of the applicable Acquired Assets (including the receipt of any required Governmental Approvals) within not more than fifteen days after entry of an order by the Bankruptcy Court approving such purchase.

(h)     Is received by the Bid Deadline.

A bid received from a Qualified Bidder will constitute a "Qualified Bid" only if it includes all of the Required Bid Documents and meets all of the above requirements. The Agreement will be deemed a Qualified Bid for all purposes in connection with the Bidding Process, the Auction, and the Sale. A bid will be valued based upon factors that include, but are not limited to, (i) the net value provided by such bid, (ii) whether it is a bid for all, or only a portion of, the Acquired Assets, (iii) if it is a bid for only a portion of the Acquired Assets, whether the bids, when combined with other bids, will exceed the All Assets Minimum Bid Amount, (iv) whether the bid contemplates the assumption and assignment of the Debtors' collective bargaining agreement with their labor unions or otherwise provides for the employment of members of such unions and (v) the likelihood and timing of consummating such transaction (collectively, the "Bid Considerations"). Each Qualified Bid other than that of the Purchasers is referred to as a "Subsequent Bid."

## Auction

If the Debtors receive one or more Qualified Bids, in addition to the Agreement, which the Debtors determine, in consultation with the Creditors' Committee and after obtaining the agreement of the DIP Agent, will provide greater value to the estate than the Agreement, the Debtors may conduct an auction (the "Auction") of the Acquired Assets upon notice to all Qualified Bidders who have submitted Qualified Bids at 10:00 a.m. (prevailing Central time) on June 24, 2009, at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Chicago, Illinois 60606 or such later time or other place as the Debtors notify all Qualified Bidders who have submitted Qualified Bids, but only with the consent of the Purchasers, in their sole discretion, in accordance with the following procedures:

(a)     Only the Debtors, the Purchasers, any representative of the Creditors' Committee, any representative of the DIP Agent, any representative of the Debtors' labor unions, and any Qualified Bidder who has timely submitted a Qualified Bid will be entitled to attend the Auction, and only the Qualified Bidders will be entitled to make any subsequent Qualified Bids at the Auction.

6

(b)    At least two Business Days prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Debtors whether it intends to participate in the Auction and at least one Business Day prior to the Auction, the Debtors will provide copies of the Qualified Bid or combination of Qualified Bids which the Debtors believe, subject to the terms hereof, is the highest or otherwise best offer to all Qualified Bidders who have informed the Debtors of their intent to participate in the Auction.

(c)    All Qualified Bidders who have submitted Qualified Bids must be present for all Subsequent Bids with the understanding that the true identity of each bidder must be fully disclosed to all other bidders and that all material terms of each Subsequent Bid must be fully disclosed to all other bidders throughout the entire Auction. Purchasers shall be told who the other Qualified Bidders are prior to the Auction and shall have the right to bid at the Auction.

(d)    The Debtors may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Bankruptcy Court entered in connection herewith.

(e)    Bidding at the Auction will begin with the highest or otherwise best Qualified Bid or combination of Qualified Bids and continue in such minimum increments or other bid improvements as determined by the Debtors in consultation with the DIP Agent and the Creditors' Committee. For the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by Purchasers), the Debtors may give effect to, among other things, any Break-Up Fee or Expense Reimbursement that may be payable to the Purchasers under the Agreement. The Purchasers may be entitled, at their sole option and discretion, to include as part of any and all of their subsequent bids a credit for the amount of the Break-Up Fee and Expense Reimbursement. In the event that the Purchasers' Qualified Bid as evidenced in the Agreement is the highest and otherwise best Qualified Bid produced at the Auction, the DIP Lenders will not seek to exercise or otherwise invoke their rights under section 363(k) of the Bankruptcy Code to credit bid at the Auction.

### Selection Of Successful Bid

At the conclusion of the Auction, or as soon thereafter as practicable, the Debtors, in consultation with the Creditors' Committee and after obtaining the agreement of the DIP Agent, will: (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including, but not limited to, those factors affecting the speed and certainty of consummating the sale, as well as the Bid Considerations; and (ii) identify the highest or otherwise best offer for the Acquired Assets received at the Auction (the "Successful Bid(s)," and the bidder(s) making such bid(s), the "Successful Bidder(s)").

The Debtors' presentation of a particular Qualified Bid to the Court for approval, other than Purchasers' Successful Bid at the direction of the DIP Agent, does not constitute the

7

Debtors' acceptance of the bid. The Debtors will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.

## The Sale Hearing

The Sale Hearing will be held before the Bankruptcy Court on June 25, 2009 at 2:00 p.m. (prevailing Central time), but may be adjourned or rescheduled in the Debtors' sole discretion, subject to Bankruptcy Court approval, as necessary, without further notice, by an announcement of the adjourned date at the Sale Hearing so long as the deadlines set forth in the Agreement are not violated or with the consent of the Purchasers if the Purchasers are the Successful Bidder. At the Sale Hearing, the Debtors may seek approval of the Successful Bid and an alternate bid (the "Alternate Bid" and such bidder, the "Alternate Bidder"). Following approval of the sale to the Successful Bidder, if the Successful Bidder fails to consummate the sale, then the Alternate Bid will be deemed to be the Successful Bid and the Debtors will be authorized, but not directed, to effectuate a sale to the Alternate Bidder subject to the terms of the Alternate Bid without further order of the Bankruptcy Court. The Purchasers shall have standing for all matters relating to and arising from the proposed Sale transaction, including standing at the Sale Hearing and enforcement of all orders entered by the Court relating to these Bidding Procedures, the Bidding Procedures Order and the Sale Order.

## Return Of Good Faith Deposits

Good Faith Deposits of all Qualified Bidders (except for the Successful Bidder) will be held in an interest-bearing escrow account and all Qualified Bids will remain open (notwithstanding Bankruptcy Court approval of a sale pursuant to the terms of one or more Successful Bids by one or more Qualified Bidders), until the earlier of (i) two Business Days after the closing of the Sale of the applicable Acquired Assets and (ii) 45 days after the Sale Hearing (the "Return Date"). Notwithstanding the foregoing, the Good Faith Deposit, if any, submitted by the Successful Bidder, together with interest thereon, will be applied against the payment of the Purchase Price upon closing of the Sale to the Successful Bidder. If a Successful Bidder breaches its obligations under the Bidding Procedures Order or any agreement entered into with respect to its Successful Bid or fails to consummate a sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtors will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, and such Good Faith Deposit will irrevocably become property of the Debtors' estates. On the Return Date, the Debtors will return the Good Faith Deposits of all other Qualified Bidders, together with the accrued interest thereon. Notwithstanding the forgoing or anything else herein, the Purchasers' deposit obligations shall be governed by the terms of the Agreement.

## Reservations Of Rights

The Debtors, after consultation with the Committee and consistent with the requirements to obtain the consent of the DIP Agent set forth elsewhere in these Bidding Procedures: (i) may determine which Qualified Bid, if any, is the highest or otherwise best offer and (ii) may reject at any time any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale, or (c) contrary to the best interests of the Debtors, their estates, their creditors, and other

8

parties in interest as determined by Debtors in their sole discretion. Notwithstanding the forgoing or anything else herein, (i) the Debtors may not impair or modify the Purchasers' rights and obligations under the Bidding Procedures Order or the Purchasers' right to credit the Break-Up Fee and Expense Reimbursement as part of any subsequent bids, or (ii) in the event the Debtors elect to withdraw from the Auction the Acquired Assets, cancels the Auction, and/or rejects all Qualifying Bids, the Debtors shall nonetheless be obligated to request at the Sale Hearing that the Court approve the Agreement with the Purchasers at the direction of the DIP Agent.

## **Appendix 1 to Bidding Procedures**

**Asset Groups**

Hickey Freeman

Bobby Jones

HMX Tailored[1]

Coppley[2]

Exclusively Misook

Simply Blue

Monarchy

Other Sportswear

---

[1]   Includes Hart Schaffner Marx, Austin Reed license, Palm Beach, Daniel Cremieux, and licensed Claiborne brands.

[2]   Consists of substantially all of the assets of Coppley Apparel Group Limited, which is a non-Debtor affiliate of the Debtors.

# **Exhibit 2**

## **Sale Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 09-02046 (BWB) |
|  | ) | (Jointly Administered) |
|  | ) | Chapter 11 |
| HARTMARX CORPORATION, | ) |  |
| et al., | ) |  |
|  | ) | Hon. Bruce W. Black |
|  | ) |  |
| Debtors.[1] | ) |  |
|  | ) |  |

## NOTICE OF SALE OF CERTAIN ASSETS AT AUCTION

PLEASE TAKE NOTICE THAT:

1.　　Pursuant to the Order (I) Approving Bidding Procedures (II) Granting Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing Date In Connection With Sale Of Substantially All Of Debtors' Assets (the "Bidding Procedures Order") entered by the United States Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Court") on June 2, 2009, Hartmarx Corporation ("Hartmarx" or the "Company") and 50 of its subsidiaries, debtors and debtors-in-possession (collectively, the "Debtors"), have entered into an Asset Purchase Agreement (as amended from time to time, the "Agreement") with Emerisque Brands UK Limited and SKNL North America, B.V. (collectively, the "Purchasers") for the sale of substantially all of the Debtors' assets subject to a competitive bidding process as set forth in the Bidding Procedures Order. Capitalized terms used but not otherwise defined in this notice have the meanings ascribed to them in the Bidding Procedures Order or the Agreement.

---

[1]　　The Debtors consist of: Hartmarx Corporation (FEIN: 36-3217140); Anniston Sportswear Corporation (FEIN: 63-0255951); Briar, Inc. (FEIN: 36-3295194); Chicago Trouser Company, Ltd. (FEIN: 36-3654087); C.M. Clothing, Inc. (FEIN: 62-0726470); C.M. Outlet Corp. (FEIN: 23-2079484); Consolidated Apparel Group, Inc. (FEIN: 36-4451205); Country Miss Inc. (FEIN: 23-2159300); Country Suburbans, Inc. (FEIN: 13-2536025); Direct Route Marketing Corporation (FEIN: 36-3353564); E-Town Sportswear Corporation (FEIN: 35-1045839); Fairwood-Wells, Inc. (FEIN: 36-2793207); Gleneagles, Inc. (FEIN: 52-0382880); Handmacher Fashions Factory Outlet, Inc. (FEIN: 62-0699057); Handmacher-Vogel, Inc. (FEIN: 13-2522868); Hart Services, Inc. (FEIN: 36-3119791); Hart Schaffner & Marx (FEIN: 36-1196390); Hartmarx International, Inc. (FEIN: 36-3849547); Hickey-Freeman Co., Inc. (FEIN: 05-0522438); Higgins, Frank & Hill, Inc. (FEIN: 36-3119788); HMX Luxury, Inc. (FEIN: 36-3432123); HMX Sportswear, Inc. (FEIN: 13-2882518); Hoosier Factories, Incorporated (FEIN: 35-1103970); HSM Real Estate LLC (FEIN: 36-4421906); HSM University, Inc. (FEIN: 36-3635288); Intercontinental Apparel, Inc. (FEIN: 22-2268615); International Women's Apparel, Inc. (FEIN: 74-1312494); Jaymar-Ruby, Inc. (FEIN: 35-0392340); JRSS, Inc. (FEIN: 35-1695663); Kuppenheimer Men's Clothiers Dadeville, Inc. (FEIN: 63-0179270); Monarchy Group, Inc. (FEIN: 26-0472040); National Clothing Company, Inc. (FEIN: 13-3056089); NYC Sweaters, Inc. (FEIN: 20-5399484); 106 Real Estate Corp. (FEIN: 23-1609394); Robert Comstock Apparel, Inc. (FEIN: 82-0494113); Robert's International Corporation (FEIN: 36-3671895); Robert Surrey, Inc. (FEIN: 36-6163392); Salhold, Inc. (FEIN: 36-3806997); Seaford Clothing Co. (FEIN: 36-1692913); Simply Blue Apparel, Inc. (FEIN: 20-3583172); Society Brand, Ltd. (FEIN: 36-6114108); Sweater.com Apparel, Inc. (FEIN: 20-5300452); Tag Licensing, Inc. (FEIN: 36-2876915); Tailored Trend, Inc. (FEIN: 13-1540282); Thorngate Uniforms, Inc. (FEIN: 23-1007260); Thos. Heath Clothes, Inc. (FEIN: 36-6114533); Trade Finance International Limited (FEIN: 36-3758253); Universal Design Group, Ltd. (FEIN: 36-3758257); M. Wile & Company, Inc. (FEIN: 16-0959019); Winchester Clothing Company (FEIN: 61-0983980); Yorke Shirt Corporation (FEIN: 36-3440608); Zooey Apparel, Inc. (FEIN: 20-5917889)

2.      Copies of (i) the Motion, (ii) the Agreement, (iii) the proposed Sale Approval Order, (iv) the Bidding Procedures, and (v) the Bidding Procedures Order can be obtained on the website of the Debtors claims and noticing agent, Kurtzman Carson Consultants LLC at www.kccllc.net/hartmarx.

3.      All interested parties are invited to make an offer to purchase the Acquired Assets in accordance with the terms and conditions approved by the Bankruptcy Court (the "Bidding Procedures") by **5:00 p.m.** (prevailing Central time) on **June 22, 2009.** Pursuant to the Bidding Procedures, the Debtors may conduct an auction for the Acquired Assets (the "Auction") beginning at **10:00 a.m.** (prevailing Central time) on **June 24, 2009** at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Chicago, Illinois 60606 or such later time or other place as the Debtors notify all Qualified Bidders who have submitted Qualified Bids.

4.      Participation at the Auction is subject to the Bidding Procedures and the Bidding Procedures Order.

5.      A hearing to approve the Sale of the Acquired Assets to the highest and best bidder will be held on **June 25, 2009** at **2:00 p.m.** (prevailing Central time) at the Bankruptcy Court.  The hearing on the Sale may be adjourned without notice other than an adjournment in open court.

6.      Objections, if any, to the proposed Sale (other than objections related to the Auction), must be filed and served in accordance with the Bidding Procedures Order, and **actually received** no later than **4:00 p.m.** (prevailing Central time) on **June 19, 2009.** Objections related to the Auction, if any, must be filed and served in accordance with the Bidding Procedures Order, and **actually received** no later than **11:00 a.m.** (prevailing Central time) on **June 25, 2009.**

7.      This notice is qualified in its entirety by the Bidding Procedures Order.

Dated: Chicago, Illinois
      [_____], 2009

George N. Panagakis (ARDC #0620527 1)
Felicia Gerber Perlman (ARDC #062 10753)
Eric J. Howe (ARDC #6291643)
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606-1285
Telephone: (312) 407-0700
Facsimile: (312) 407-0411

Proposed Attorneys for Debtors and Debtors-in-
Possession

3

# **Exhibit 3**

# **Cure Notice**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) ) | Case No. 09-02046 (BWB) (Jointly Administered) Chapter 11 |
| HARTMARX CORPORATION, et al., | ) ) ) | Hon. Bruce W. Black |
| Debtors.[1] | ) ) ) ) | |

### NOTICE OF CURE AMOUNT WITH RESPECT TO EXECUTORY CONTRACTS OR UNEXPIRED LEASES POTENTIALLY TO BE ASSUMED AND ASSIGNED IN CONNECTION WITH SALE OF DEBTORS' ASSETS

PLEASE TAKE NOTICE THAT:

1.      Pursuant to the Order (I) Approving Bidding Procedures (II) Granting

Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices, And (IV)

Setting Sale Hearing Date In Connection With Sale Of Substantially All Of Debtors' Assets

(the "Bidding Procedures Order") entered by the United States Bankruptcy Court for the

---

[1]      The Debtors consist of: Hartmarx Corporation (FEIN: 36-3217140); Anniston Sportswear Corporation (FEIN: 63-0255951); Briar, Inc. (FEIN: 36-3295194); Chicago Trouser Company, Ltd. (FEIN: 36-3654087); C.M. Clothing, Inc. (FEIN: 62-0726470); C.M. Outlet Corp. (FEIN: 23-2079484); Consolidated Apparel Group, Inc. (FEIN: 36-4451205); Country Miss. Inc. (FEIN: 23-2159300); Country Suburbans, Inc. (FEIN: 13-2536025); Direct Route Marketing Corporation (FEIN: 36-3353564); E-Town Sportswear Corporation (FEIN: 35-1045839); Fairwood-Wells, Inc. (FEIN: 36-2793207); Gleneagles, Inc. (FEIN: 52-0382880); Handmacher Fashions Factory Outlet, Inc. (FEIN: 62-0699057); Handmacher-Vogel, Inc. (FEIN: 13-2522868); Hart Services, Inc. (FEIN: 36-3119791); Hart Schaffner & Marx (FEIN: 36-1196390); Hartmarx International, Inc. (FEIN: 36-3849547); Hickey-Freeman Co., Inc. (FEIN: 05-0522438); Higgins, Frank & Hill, Inc. (FEIN: 36-3119788); HMX Luxury, Inc. (FEIN: 36-3432123); HMX Sportswear, Inc. (FEIN: 13-2882518); Hoosier Factories, Incorporated (FEIN: 35-1103970); HSM Real Estate LLC (FEIN: 36-4421906); HSM University, Inc. (FEIN: 36-3635288); Intercontinental Apparel, Inc. (FEIN: 22-2268615); International Women's Apparel, Inc. (FEIN: 74-1312494); Jaymar-Ruby, Inc. (FEIN: 35-0392340); JRSS, Inc. (FEIN: 35-1695663); Kuppenheimer Men's Clothiers Dadeville, Inc. (FEIN: 63-0179270); Monarchy Group, Inc. (FEIN: 26-0472040); National Clothing Company, Inc. (FEIN: 13-3056089); NYC Sweaters, Inc. (FEIN: 20-5399484); 106 Real Estate Corp. (FEIN: 23-1609394); Robert Comstock Apparel, Inc. (FEIN: 82-0494113); Robert's International Corporation (FEIN: 36-3671895); Robert Surrey, Inc. (FEIN: 36-6163392); Salhold, Inc. (FEIN: 36-3806997); Seaford Clothing Co. (FEIN: 36-1692913); Simply Blue Apparel, Inc. (FEIN: 20-3583172); Society Brand, Ltd. (FEIN: 36-6114108); Sweater.com Apparel, Inc. (FEIN: 20-5300452); Tag Licensing, Inc. (FEIN: 36-2876915); Tailored Trend, Inc. (FEIN: 13-1540282); Thorngate Uniforms, Inc. (FEIN: 23-1007260); Thos. Heath Clothes, Inc. (FEIN: 36-6114533); Trade Finance International Limited (FEIN: 36-3758253); Universal Design Group, Ltd. (FEIN: 36-3758257); M. Wile & Company, Inc. (FEIN: 16-0959019); Winchester Clothing Company (FEIN: 61-0983980); Yorke Shirt Corporation (FEIN: 36-3440608); Zooey Apparel, Inc. (FEIN: 20-5917889)

Northern District of Illinois (the "Bankruptcy Court") on June 2, 2009, Hartmarx Corporation

("Hartmarx" or the "Company") and 50 of its subsidiaries, debtors and debtors-in-possession

(collectively, the "Debtors"), have entered into an Asset Purchase Agreement (as amended

from time to time, the "Agreement") with Emerisque Brands UK Limited and SKNL North

America, B.V. (collectively, the "Purchasers") for the sale of substantially all of the Debtors'

assets. The Debtors hereby provide notice that they may assume and assign the prepetition

executory contracts or unexpired leases (the "Assumed Contracts") listed on Exhibit 1 hereto

to the Purchasers or the Successful Bidder, as the case may be. Capitalized terms used but

not otherwise defined in this notice have the meanings ascribed to them in the Bidding

Procedures Order or the Agreement.

2.      On the date of the closing of the transactions contemplated by the

Agreement (the "Closing Date"), or as soon thereafter as is reasonably practicable, the

Debtors will pay the amount the Debtors' records reflect is owing for prepetition arrearages, if

any, as set forth on Exhibit 1 hereto (the "Cure Amount"). The Debtors' records reflect that

all postpetition amounts owing under the Assumed Contracts have been paid and will

continue to be paid until the assumption and assignment of the Assumed Contracts and that,

other than the Cure Amount, there are no other defaults under the Assumed Contracts.

3.      Objections, if any, to the proposed Cure Amount must (a) be in

writing, (b) state with specificity the cure amount asserted to be required, (c) include

appropriate documentation thereof, (d) be filed with the Bankruptcy Court no later than June

19, 2009 and served on the following parties: (i) Hartmarx Corporation, 101 North Wacker

Drive, Chicago, Illinois (Att'n: General Counsel), (ii) counsel to the Debtors, Skadden, Arps,

Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606

(Att'n: George Panagakis and Eric Howe), (iii) counsel for the agent under the postpetition

credit facility, Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Ave., New York, New

York 10169 (Att'n: Jonathan Helfat and Daniel Fiorillo, (iv) counsel for the official

committee of unsecured creditors, Neal, Gerber, & Eisenberg LLP, 2 North LaSalle Street,

Suite 1700, Chicago, Illinois 60602 (Att'n: Mark Berkoff and Tom Wolford), (v) counsel for

the Purchasers, Steptoe & Johnson LLP, 750 Seventh Avenue, New York, New York 10019

(Att'n: Michael Rennock) and Steptoe & Johnson LLP, 2121 Avenue of the Stars, Suite 2800,

Los Angeles, California 90067 (Att'n: Robbin L. Itkin and Kelly K. Frazier), and (vi) the

Office of the United States Trustee for the Northern District of Illinois, 219 South Dearborn,

Room 873, Chicago, Illinois 60604 (Att'n: Gretchen Silver).

        4.     If an objection to the Cure Amount is timely filed and received and the

parties are unable to consensually resolve the dispute, the amount to be paid under section

365 of the Bankruptcy Code, if any, with respect to such objection will be determined at a

hearing to be requested by the Debtors or by the objecting counterparty. At the Purchasers'

or the Successful Bidders' discretion, and provided the Purchasers or the Successful Bidder

escrow the disputed portion of the Cure Amount, the hearing regarding the Cure Amount may

be continued until after the Closing Date and the Assumed Contract(s) subjected to such Cure

Amount shall be assumed and assigned to the Purchasers or the Successful Bidder at Closing.

        5.     If no objection is timely received, the Cure Amount set forth in

Exhibit 1 hereto will be controlling, notwithstanding anything to the contrary in any Assumed

Contract or any other document, and the non-Debtor party to the Assumed Contract will be

deemed to have consented to the Cure Amount and will be forever barred from asserting any

other claims respecting such Assumed Contract against the Debtors, the Purchasers, or the

Successful Bidder (as appropriate), or the property of any of them. The failure of any

objecting person or entity to timely file its objection will be a bar to the assertion, at the Sale

Hearing or thereafter, of any objection to the Sale Motion, the Sale, or the Debtors'

consummation of and performance under the Agreement (including the transfer of the

Acquired Assets and the Assumed Contracts free and clear of all Claims and Interests), if authorized by the Court.

6.      Prior to the date of the Closing Date, the Debtors may amend their decision with respect to the assumption and assignment of the Assumed Contract and provide a new notice amending the information provided in this notice.

Dated:  Chicago, Illinois
        [_____], 2009

4

# Exhibit 4

**Purchaser Assignment Notice**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) ) ) | Case No. 09-02046 (BWB) (Jointly Administered) Chapter 11 |
| HARTMARX CORPORATION, et al., | ) ) ) | Hon. Bruce W. Black |
| Debtors.[1] | ) ) ) | |

**NOTICE OF ASSUMPTION AND/OR ASSIGNMENT OF EXECUTORY
CONTRACTS OR UNEXPIRED LEASES TO PURCHASERS IN
CONNECTION WITH SALE OF DEBTORS' ASSETS**

PLEASE TAKE NOTICE THAT:

       1.     Pursuant to the Order (I) Approving Bidding Procedures (II) Granting

Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices, And (IV)

Setting Sale Hearing Date In Connection With Sale Of Substantially All Of Debtors' Assets

---

[1]    The Debtors consist of: Hartmarx Corporation (FEIN: 36-3217140); Anniston Sportswear Corporation (FEIN: 63-0255951); Briar, Inc. (FEIN: 36-3295194); Chicago Trouser Company, Ltd. (FEIN: 36-3654087); C.M. Clothing, Inc. (FEIN: 62-0726470); C.M. Outlet Corp. (FEIN: 23-2079484); Consolidated Apparel Group, Inc. (FEIN: 36-4451205); Country Miss. Inc. (FEIN: 23-2159300); Country Suburbans, Inc. (FEIN: 13-2536025); Direct Route Marketing Corporation (FEIN: 36-3353564); E-Town Sportswear Corporation (FEIN: 35-1045839); Fairwood-Wells, Inc. (FEIN: 36-2793207); Gleneagles, Inc. (FEIN: 52-0382880); Handmacher Fashions Factory Outlet, Inc. (FEIN: 62-0699057); Handmacher-Vogel, Inc. (FEIN: 13-2522868); Hart Services, Inc. (FEIN: 36-3119791); Hart Schaffner & Marx (FEIN: 36-1196390); Hartmarx International, Inc. (FEIN: 36-3849547); Hickey-Freeman Co., Inc. (FEIN: 05-0522438); Higgins, Frank & Hill, Inc. (FEIN: 36-3119788); HMX Luxury, Inc. (FEIN: 36-3432123); HMX Sportswear, Inc. (FEIN: 13-2882518); Hoosier Factories, Incorporated (FEIN: 35-1103970); HSM Real Estate LLC (FEIN: 36-4421906); HSM University, Inc. (FEIN: 36-3635288); Intercontinental Apparel, Inc. (FEIN: 22-2268615); International Women's Apparel, Inc. (FEIN: 74-1312494); Jaymar-Ruby, Inc. (FEIN: 35-0392340); JRSS, Inc. (FEIN: 35-1695663); Kuppenheimer Men's Clothiers Dadeville, Inc. (FEIN: 63-0179270); Monarchy Group, Inc. (FEIN: 26-0472040); National Clothing Company, Inc. (FEIN: 13-3056089); NYC Sweaters, Inc. (FEIN: 20-5399484); 106 Real Estate Corp. (FEIN: 23-1609394); Robert Comstock Apparel, Inc. (FEIN: 82-0494113); Robert's International Corporation (FEIN: 36-3671895); Robert Surrey, Inc. (FEIN: 36-6163392); Salhold, Inc. (FEIN: 36-3806997); Seaford Clothing Co. (FEIN: 36-1692913); Simply Blue Apparel, Inc. (FEIN: 20-3583172); Society Brand, Ltd. (FEIN: 36-6114108); Sweater.com Apparel, Inc. (FEIN: 20-5300452); Tag Licensing, Inc. (FEIN: 36-2876915); Tailored Trend, Inc. (FEIN: 13-1540282); Thorngate Uniforms, Inc. (FEIN: 23-1007260); Thos. Heath Clothes, Inc. (FEIN: 36-6114533); Trade Finance International Limited (FEIN: 36-3758253); Universal Design Group, Ltd. (FEIN: 36-3758257); M. Wile & Company, Inc. (FEIN: 16-0959019); Winchester Clothing Company (FEIN: 61-0983980); Yorke Shirt Corporation (FEIN: 36-3440608); Zooey Apparel, Inc. (FEIN: 20-5917889)

(the "Bidding Procedures Order") entered by the United States Bankruptcy Court for the

Northern District of Illinois (the "Bankruptcy Court") on June 2, 2009, Hartmarx Corporation

("Hartmarx" or the "Company") and 50 of its subsidiaries, debtors and debtors-in-possession

(collectively, the "Debtors"), have entered into an Asset Purchase Agreement (as amended

from time to time, the "Agreement") with Emerisque Brands UK Limited and SKNL North

America, B.V. (collectively, the "Purchasers") for the sale of substantially all of the Debtors'

assets. Capitalized terms used but not otherwise defined in this notice have the meanings

ascribed to them in the Bidding Procedures Order or the Agreement.

2.      Pursuant to the terms of the Agreement and subject to completion of a

competitive bidding process described in the Bidding Procedures Order and the attachments

thereto, the Debtors will seek to assume and assign the prepetition contracts (the "Assumed

Contracts") and assign the postpetition contracts (the "Postpetition Contracts") listed on

Exhibit 1 hereto to the Purchasers at the hearing to be held at 2:00 p.m. (prevailing Central

time) on June 25, 2009 (the "Sale Hearing") before the Bankruptcy Court.

3.      Objections, if any, to the assumption and assignment of an Assumed

Contract must (a) be in writing, (b) state with specificity the reasons for such objection, and

(c) be filed with the Bankruptcy Court no later than June 19, 2009 and served on the

following parties: (i) Hartmarx Corporation, 101 North Wacker Drive, Chicago, Illinois

(Att'n: General Counsel), (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom

LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: George Panagakis

and Eric Howe), (iii) counsel for the agent under the postpetition credit facility, Otterbourg,

Steindler, Houston & Rosen, P.C., 230 Park Ave., New York, New York 10169 (Att'n:

Jonathan Helfat and Daniel Fiorillo, (iv) counsel for the official committee of unsecured

creditors, Neal, Gerber, & Eisenberg LLP, 2 North LaSalle Street, Suite 1700, Chicago,

Illinois 60602 (Att'n: Mark Berkoff and Tom Wolford), (v) counsel for the Purchasers,

2

Steptoe & Johnson LLP, 750 Seventh Avenue, New York, New York 10019 (Att'n: Michael

Rennock), and (vi) the Office of the United States Trustee for the Northern District of

Illinois, 219 South Dearborn, Room 873, Chicago, Illinois 60604 (Att'n: Gretchen Silver).

      4.     If an objection to the assumption and assignment of an Assumed

Contract is timely filed and received, a hearing with respect to the objection will be held

before the Bankruptcy Court at the Sale Hearing or such date and time as the Bankruptcy

Court may schedule.  If no objection is timely received, the non-Debtor party to the Assumed

Contract will be deemed to have consented to the assumption and assignment of the Assumed

Contract and will be forever barred from asserting any other claims, including but not limited

to the propriety or effectiveness of the assumption and assignment of the Assumed Contract,

against the Debtors or the Purchasers, or the property of either of them.

      5.     Pursuant to 11 U.S.C. § 365, there is adequate assurance of future

performance that the Cure Amount set forth in the Cure Notice will be paid in accordance

with the terms of the order approving the Sale of the Acquired Assets.  Further, there is

adequate assurance of the Purchasers' future performance under the executory contract or

unexpired lease to be assumed and assigned because of the significant resources of the

Purchasers.

      6.     Prior to the Closing Date, the Debtors may revise their decision with

respect to the assumption and/or assignment of any Assumed Contract or Postpetition

Contract and provide a new notice amending the information provided in this notice.

Dated:  Chicago, Illinois
        [_____], 2009

                                    _____
                                    George N. Panagakis (ARDC #0620527 1)
                                    Felicia Gerber Perlman (ARDC #062 10753)
                                    Eric J. Howe (ARDC #6291643)
                                    SKADDEN, ARPS, SLATE, MEAGHER
                                      & FLOM LLP
                                    333 West Wacker Drive, Suite 2100
                                    Chicago, Illinois 60606-1285
                                    Telephone: (312) 407-0700
                                    Facsimile: (312) 407-0411

                                    Attorneys for Debtors and Debtors-in-Possession

# **Exhibit 5**

## **Qualified Bidder Assignment Notice**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) ) | Case No. 09-02046 (BWB) (Jointly Administered) Chapter 11 |
| HARTMARX CORPORATION, et al., |  ) ) | Hon. Bruce W. Black |
|  | ) |  |
| Debtors.[1] | ) ) | |

**NOTICE OF ASSUMPTION AND/OR ASSIGNMENT OF EXECUTORY
CONTRACTS OR UNEXPIRED LEASES TO QUALIFIED BIDDERS
IN CONNECTION WITH SALE OF DEBTORS' ASSETS**

PLEASE TAKE NOTICE THAT:

        1.     Pursuant to the Order (I) Approving Bidding Procedures (II) Granting

Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices, And (IV)

Setting Sale Hearing Date In Connection With Sale Of Substantially All Of Debtors' Assets

---

[1]    The Debtors consist of: Hartmarx Corporation (FEIN: 36-3217140); Anniston Sportswear Corporation (FEIN: 63-0255951); Briar, Inc. (FEIN: 36-3295194); Chicago Trouser Company, Ltd. (FEIN: 36-3654087); C.M. Clothing, Inc. (FEIN: 62-0726470); C.M. Outlet Corp. (FEIN: 23-2079484); Consolidated Apparel Group, Inc. (FEIN: 36-4451205); Country Miss. Inc. (FEIN: 23-2159300); Country Suburbans, Inc. (FEIN: 13-2536025); Direct Route Marketing Corporation (FEIN: 36-3353564); E-Town Sportswear Corporation (FEIN: 35-1045839); Fairwood-Wells, Inc. (FEIN: 36-2793207); Gleneagles, Inc. (FEIN: 52-0382880); Handmacher Fashions Factory Outlet, Inc. (FEIN: 62-0699057); Handmacher-Vogel, Inc. (FEIN: 13-2522868); Hart Services, Inc. (FEIN: 36-3119791); Hart Schaffner & Marx (FEIN: 36-1196390); Hartmarx International, Inc. (FEIN: 36-3849547); Hickey-Freeman Co., Inc. (FEIN: 05-0522438); Higgins, Frank & Hill, Inc. (FEIN: 36-3119788); HMX Luxury, Inc. (FEIN: 36-3432123); HMX Sportswear, Inc. (FEIN: 13-2882518); Hoosier Factories, Incorporated (FEIN: 35-1103970); HSM Real Estate LLC (FEIN: 36-4421906); HSM University, Inc. (FEIN: 36-3635288); Intercontinental Apparel, Inc. (FEIN: 22-2268615); International Women's Apparel, Inc. (FEIN: 74-1312494); Jaymar-Ruby, Inc. (FEIN: 35-0392340); JRSS, Inc. (FEIN: 35-1695663); Kuppenheimer Men's Clothiers Dadeville, Inc. (FEIN: 63-0179270); Monarchy Group, Inc. (FEIN: 26-0472040); National Clothing Company, Inc. (FEIN: 13-3056089); NYC Sweaters, Inc. (FEIN: 20-5399484); 106 Real Estate Corp. (FEIN: 23-1609394); Robert Comstock Apparel, Inc. (FEIN: 82-0494113); Robert's International Corporation (FEIN: 36-3671895); Robert Surrey, Inc. (FEIN: 36-6163392); Salhold, Inc. (FEIN: 36-3806997); Seaford Clothing Co. (FEIN: 36-1692913); Simply Blue Apparel, Inc. (FEIN: 20-3583172); Society Brand, Ltd. (FEIN: 36-6114108); Sweater.com Apparel, Inc. (FEIN: 20-5300452); Tag Licensing, Inc. (FEIN: 36-2876915); Tailored Trend, Inc. (FEIN: 13-1540282); Thorngate Uniforms, Inc. (FEIN: 23-1007260); Thos. Heath Clothes, Inc. (FEIN: 36-6114533); Trade Finance International Limited (FEIN: 36-3758253); Universal Design Group, Ltd. (FEIN: 36-3758257); M. Wile & Company, Inc. (FEIN: 16-0959019); Winchester Clothing Company (FEIN: 61-0983980); Yorke Shirt Corporation (FEIN: 36-3440608); Zooey Apparel, Inc. (FEIN: 20-5917889)

(the "Bidding Procedures Order") entered by the United States Bankruptcy Court for the

Northern District of Illinois (the "Bankruptcy Court") on June 2, 2009, Hartmarx Corporation

("Hartmarx" or the "Company") and 50 of its subsidiaries, debtors and debtors-in-possession

(collectively, the "Debtors"), have entered into an Asset Purchase Agreement (as amended

from time to time, the "Agreement") with Emerisque Brands UK Limited and SKNL North

America, B.V. (collectively, the "Purchasers") for the sale of substantially all of the Debtors'

assets.  Capitalized terms used but not otherwise defined in this notice have the meanings

ascribed to them in the Bidding Procedures Order or the Agreement.

        2.        Pursuant to the Bidding Procedures set forth in the Bidding Procedures

Order, the following parties, in addition to the Purchasers, may submit Qualified Bids for the

Acquired Assets and  participate in an Auction to be held on June 24, 2009 at the offices of

Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Chicago, Illinois

60606, or such later time or other place as the Debtors may notify all Qualified Bidders who

have submitted Qualified Bids:

| Potential Qualified Bidders |
| --- |
| |
| |

        3.        Pursuant to the terms of the Agreement (or any asset sale and purchase

agreement that the Debtors may enter into with the Successful Bidder), the Debtors may seek

to assume and assign the prepetition contracts (the "Assumed Contracts") and assign the

postpetition contracts (the "Postpetition Contracts") listed on Exhibit 1 hereto to the

Purchasers or the Successful Bidder, as the case may be, subject to approval at the hearing to

2

be held at 2:00 p.m. (prevailing Central time) on June 25, 2009 (the "Sale Hearing") before the Bankruptcy Court.

      4.    Objections, if any, to the assumption and assignment of an Assumed Contract to a Qualified Bidder (other than the Purchasers), who may ultimately become the Successful Bidder, must (a) be in writing, (b) state with specificity the reasons for such objection, and (c) be filed with the Bankruptcy Court no later than June 24, 2009 at 4:00 p.m. (prevailing Central time) and served on the following parties: (i) Hartmarx Corporation, 101 North Wacker Drive, Chicago, Illinois (Att'n: General Counsel), (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: George Panagakis and Eric Howe), (iii) counsel for the agent under the postpetition credit facility, Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Ave., New York, New York 10169 (Att'n: Jonathan Helfat and Daniel Fiorillo, (iv) counsel for the official committee of unsecured creditors, Neal, Gerber, & Eisenberg LLP, 2 North LaSalle Street, Suite 1700, Chicago, Illinois 60602 (Att'n: Mark Berkoff and Tom Wolford), (v) counsel for the potential Qualified Bidders, **[TO COME]**, and (vi) the Office of the United States Trustee for the Northern District of Illinois, 219 South Dearborn, Room 873, Chicago, Illinois 60604 (Att'n: Gretchen Silver).

      5.    If an objection to the assumption and assignment of an Assumed Contract is timely filed and received, a hearing with respect to the objection will be held before the Bankruptcy Court at the Sale Hearing or such date and time as the Bankruptcy Court may schedule. If no objection is timely received, the non-Debtor party to the Assumed Contract will be deemed to have consented to the assumption and assignment of the Assumed Contract and will be forever barred from asserting any other claims, including but not limited to the propriety or effectiveness of the assumption and assignment of the Assumed Contract, against the Debtors or the Successful Bidder, or the property of either of them.

3

6.      Pursuant to 11 U.S.C. § 365, there is adequate assurance of future performance that the Cure Amount set forth in the Cure Notice will be paid in accordance with the terms of the order approving the Sale of the Acquired Assets.  Further, there is adequate assurance of the Qualified Bidders' future performance under the executory contract or unexpired lease to be assumed and assigned because of the significant resources of the Qualified Bidders.

7.      Prior to the Closing Date, the Debtors may revise their decision with respect to the assumption and/or assignment of any Assumed Contract or Postpetition Contract and provide a new notice amending the information provided in this notice.

Dated:  Chicago, Illinois
        [_____], 2009

4